**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLORADO**

Criminal Action No.: 16-cr-00329-MSK-GPG

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. **STORMY BOB GRIFFITH**,

    Defendant.

---

**UNITED STATES' MOTION TO DISQUALIFY DEFENSE COUNSEL**

---

The United States of America, by and through Acting United States Attorney Robert C. Troyer and Assistant United States Attorneys Garreth Winstead and Bryan Fields, hereby move for disqualification of the defendant's current defense counsel, Corrie & Associates, and provides as grounds therefore the following.

**I.     The United States Intends to Call Stacy Griffith as a Witness.**

The United States intends to call Stacy Griffith as a witness at trial. Mrs. Griffith has agreed to testify. The United States made a proffer to the Court at the final pretrial conference with regard to the expected content of Mrs. Griffith's testimony. That testimony is extremely relevant to the case, and contains many facts that could not be introduced without her testimony. There is no basis for excluding Mrs. Griffith's testimony, and doing so would be extremely unfairly prejudicial to the United States.

### A.     Spousal Testimonial Privilege is irrelevant.

The defendant cannot invoke Spousal Testimonial privilege to prevent Stacy Griffith from testifying against him. The Supreme Court has held that the adverse spouse can testify over the defendant's objection. *See Trammel v. United States*, 445 U.S. 40, 52 (1980) (categorically rejecting rule that accused may invoke privilege against adverse spousal testimony and reasoning that "[A] rule of evidence that permits an accused to prevent adverse spousal testimony seems far more likely to frustrate justice than to foster family peace."). Here, Mrs. Griffith would be testifying voluntarily. Therefore the testimonial privilege is not relevant to the conflict at issue in this case.

### B.     Marital Communications Privilege is irrelevant.

The marital communications privilege, is not relevant to the conflict. The United States does not intend to elicit testimony that might be covered by a marital privilege. But,even if questions arise as to some specific testimony and whether the privilege applies, that privilege could not possibly apply to all of Stacy Griffith's testimony, for the reasons below, and thus the existence of a conflict still exists because Mrs. Griffith with still be subject to cross-examination by her former counsel.

First, the anticipated testimony will relate to non-confidential statements and observations related to the charges. The marital communications privilege requires that the communications be made in confidence. *See Wolfe v. United States*, 291 U.S. 7, 14 (1934) ("Communications between the spouses, privately made, are generally assumed to have been intended to be confidential, and hence they are privileged; but, wherever a communication, because of its nature or the circumstances under which it was made, was obviously not intended

to be confidential, it is not a privileged communication."); *Pereira v. United States*, 347 U.S. 1, 7 (1954) (Although marital communications are presumed to be confidential, that presumption may be overcome by proof of facts showing that they were not intended to be private. The presence of a third party negatives the presumption of privacy. So too, the intention that the information conveyed be transmitted to a third person.) (internal citation omitted); *United States v. Wade*, 203 F. App'x 920 (10th Cir. 2006) (finding statements made aloud in presence of accountant were not protected by martial confidential communications privilege).

Stacy Griffith's observations that her husband purchased firearms from others, that he frequently went shooting with others, and that he purchased ammunition at stores are not confidential. The same is true of Griffith's observations of her husband tending marijuana plants with others and processing marijuana with others

Second, assuming that there are confidential communications about the alleged conspiracy (i.e., statements made in private, and not in the presence of others tending the marijuana fields) any such communications would be well within the crime-fraud exception to the privilege. For example, testimony that the defendant asked Stacy Griffith to obtain medical marijuana cards, even though Mrs. Griffith does not use marijuana and had no intention of using marijuana, would be admissible to show the defendant's knowledge and intent to violate the law. Assuming that the defendant's proposed "mistake of law" defense is allowed to be presented by the court, such evidence that the defendant used his wife to violate the law would be vital to proving the government's case. *See United States v. Neal*, 743 F.2d 1441, 1447 (10th Cir. 1984) ("In summary, we hold that conversations between husband and wife about crimes in which they conspire or participate or, after the fact, participate in, are not privileged marital communications

for the purpose of protection as confidential marital communications."); *United States v. Kapnison*, 743 F.2d 1450 (10th Cir. 1984) (finding that wife's testimony against husband relating to her involvement in loan fee scheme was not protected by martial privilege).

Accordingly, while the Marital Communications Privilege may or may not be relevant during trial, it is not relevant to the question of the conflict.

### C.   Stacy Griffith's testimony is admissible relevant evidence.

Though the defendant argued in the hearing that the Court should suppress Mrs. Griffith's testimony, the defendant provided basis for such a request. There is no legal basis for suppression. Additionally, the United States has engaged in no law or rule violations. The United States pursued Mrs. Griffith as a witness with all dispatch once the United States became aware of the her potential willingness to testify. The United States provided defense counsel with notice of the situation the same day that the decision was made for Mrs. Griffith to testify, and conferred with defense counsel about the potential conflict; and as soon as the United States was aware that defense counsel had reviewed the matter and decided not to seek to withdraw, the United States provided notice to the Court of the conflict. The United States timely filed its witness list, including Mrs. Griffith.

The United States therefore requests that this Court deny the defendant's oral request to suppress Mrs. Griffith's testimony, as such a drastic step would severely prejudice the United States, and as there is no basis in law for such suppression.

## II.   Because Stacy Griffith Is a Witness, an Actual Conflict Exists

The United States has no intention to interfere with the Defendant's choice of counsel or the orderly and timely conduct of the criminal trial. However, the United States believes that an

actual conflict exists with regard to the defendant's representation by current defense counsel, and therefore that the interests of justice require the United States to note that conflict and move that defense counsel be disqualified. "The government attorney in a criminal prosecution is not an ordinary party to a controversy, but a 'servant of the law.'" *Singer v. United States*, 380 U.S. 24, 37, 85 S. Ct. 783, 791 (1965). Additionally, the United States has an obligation to bring conflicts to the attention of the Court because "Federal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Wheat v. United States*, 486 U.S. 153, 160 (1988); *see also United States v. Stantini*, 85 F.3d 9, 13 (2nd Cir. 1996) ("Convictions are placed in jeopardy and scarce judicial resources are wasted when possible conflicts are not addressed as early as possible. We therefore reiterate our admonition to the government in earlier cases to bring potential conflicts to the attention of trial judges.").

### A.    Applicable Rules of Professional Conduct

With regard to facts of this case, three provisions of the rules pertain: Colorado Rule of Professional Conduct 1.7(b) states, "[a] lawyer shall not represent a client if the lawyer's exercise of independent professional judgment in the representation of that client may be materially limited by the lawyer's responsibilities to another client . . . unless: (1) the lawyer reasonably believes the representation will not be adversely affected; and (2) the client consents after consultation." Colo. RPC 1.7(b). The second, Rule 1.9(a), states "a lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in

writing." Finally, Rule 1.9(c), states "[a] lawyer who has formerly represented a client in a matter . . . shall not thereafter: (1) use information relating to the representation to the disadvantage of the former client . . . or (2) reveal information relating to the representation . . . ." Colo. RPC 1.9(c).

### B. Nature of the Conflict

Where defense counsel has a duty on the one hand prohibiting full cross-examination, and on the other hand the requirement to zealously represent his current client, an actual conflict arises. *United States v. Winkle*, 722 F.2d 605, 610 (10th Cir. 1983). In *United States v. Sablan*, 176 F. Supp. 2d 1086 (D. Colo. 2001), the court addressed a situation where the public defender's office had formerly represented a person who was to be a witness against a current client of the office. The Court found that disqualification was necessary:

> In reconciling the duties and rights of the parties under the Sixth Amendment and the Rules of Professional Conduct, the Court concludes that the Office of the Federal Public Defender has an actual conflict of interest if Spry testifies in this case. Three attorneys with the Office of the Federal Public Defender represented Spry in Criminal Case No. 98-CR-180. As a result of that representation, the Office of the Federal Public Defender is in possession of confidential information relating to Spry, and moreover, owes continuing obligations of loyalty and confidentiality to Spry. If a member of the Office of the Federal Public Defender attempts to cross-examine Spry in this case, he or she will be unable to impeach him with that confidential information without violating continuing duties to Spry as a former client. The Tenth Circuit has stated that an actual conflict exists if defense counsel is unable to cross-examine a Government witness effectively because the attorney previously represented the Government witness. *United States v. Winkle*, 722 F.2d 605, 610 (10th Cir. 1983). Conversely, if a member of the Office of the Federal Public Defender attempts to alleviate the conflict by simply ignoring the confidential information in their possession, the representation of Defendant will be ineffective due to the inability of defense counsel to conduct a thorough cross-examination. *United States v. Gotti*, 9 F. Supp. 2d 320, 324 (S.D.N.Y. 1998).

*Id.* at 1090.

The Second Circuit has also addressed a factually similar case. After observing the divided duties—to conduct thorough cross examination, in violation of duties to the former client, or to conduct less-than-thorough cross examination and thereby render ineffective assistance—the court observed that the mere suggestion that defense counsel agree not to use any confidential information was not a proper solution:

> The compromise proffered pretrial here was not acceptable professional conduct; an attorney should never offer to be less thorough or diligent in the interest of his client. . . . In the circumstances presented by this case, there can be no doubt that Linn's potential conflict was serious, that his loyalty was divided between a client and a former client, and that representing Tineo would have created a strong appearance of impropriety.

*United States ex rel. Stewart v. Kelly*, 870 F.2d 854, 857 (2d Cir. 1989). In another case from the Second Circuit, *United States v. Iorizzo*, 786 F.2d 52, 57 (2d Cir. 1986), the court reversed a conviction based upon ineffective assistance of counsel: during trial, the government objected to areas of cross examination of defense counsel's former client. Faced with the possibility of disciplinary hearings and consequent risk to professional reputation and employment, the defense attorney avoided certain areas of cross-examination of a former client, which was "viewed by all concerned as necessary to allow defense counsel to avoid ethically improper conduct." *Id.* at 58. Despite the fact that the defendant had consented to the limitation on cross-examination, the court found that that waiver was insufficient to cure the ineffective assistance. *Id.* at 59.

Accordingly, faced with the duty not to disclose confidential communications from Mrs. Griffith, and the duty to seek out any information held by his law firm about Mrs. Griffith to use for cross-examination, an actual conflict exists with the defendant's current counsel. However, the conflict goes beyond the facts of many of the relevant cases, because in addition to not

merely having a duty not to disclose confidential information, counsel in this case is prohibited from any cross-examination of Mrs. Griffith.

### C. Defense counsel has a duty not to conduct any cross-examination of Mrs. Griffith.

In this case, as relevant under Colorado Rule of Professional Conduct 1.9(a), cross-examining Mrs. Griffith is impermissible because it would be materially adverse to Mrs. Griffith's former representation in a substantially related matter.

> The party seeking disqualification under Rule 1.9 must provide the court with specific facts to show that disqualification is necessary and he cannot rely on speculation or conjecture. Specifically, the moving party must show that: (1) an attorney-client relationship existed in the past; (2) the present litigation involves a matter that is 'substantially related' to the prior litigation; (3) the present client's interests are materially adverse to the former client's interests; and (4) the former client has not consented to the disputed representation after consultation.

FUNPLEX PSHP. v. FDIC, 19 F. Supp. 2d 1201, 1206-07 (D. Colo. 1998).

There is no dispute that Stacy Griffith was represented by Corry & Associates, current defense counsel's firm. Accordingly, "the merits of this disqualification motion depend on whether a substantial relationship exists between the pending suit and the matter in which the challenged attorney previously represented the client. Substantiality is present if the factual contexts of the two representations are similar or related." *Smith v. Whatcott*, 757 F.2d 1098, 1100 (10th Cir. 1985) (internal citations and quotation marks omitted).

In this case, upon information and belief, Stacy Griffith was represented by defense counsel's firm along with the defendant in a state criminal case arising from a search warrant from 2015. The facts in that case are closely related to the facts in the current federal case. The United States and defense counsel agreed that those facts were related and made representations

to the Court on the matter during the hearing on defendant's motion to continue held on December 20, 2016.

More importantly, upon information and belief, Stacy Griffith was represented by the defense counsel's firm with regard to the same factual circumstances that are the basis for the current charges against the defendant. That is, the state brought charges against Mrs. Griffith and the defendant[1] for crimes arising out of the same 2016 marijuana conspiracy charged in the federal indictment. Thus, while the state charge was legally distinct from the federal charge, the parallel actions by the state and federal government are, for all practical purposes, the same and are certainly "substantially related."

"If the movant establishes the first two prongs, an irrebuttable presumption arises that a client has indeed revealed facts to the attorney that require his disqualification." *United States v. Stiger*, 413 F.3d 1185, 1196 (10th Cir. 2005) (citing *Whatcott*, 757 F.2d at 1100. "The presumption is intended to protect client confidentiality as well as to avoid any appearance of impropriety. Moreover, as the Fifth Circuit has pointed out, "[it] is intended to prevent proof that would be improper to make." *Whatcott*, 757 F.2d at 1100 (10th Cir. 1985) (quoting *In re Corrugated Container Antitrust Litigation*, 659 F.2d 1341, 1347 (5th Cir. 1981), overruled on appealability issue, *Gibbs v. Paluk*, 742 F.2d 181, 185 (5th Cir. 1984); other citations omitted). "The conclusion that two matters are substantially related also gives rise to a second presumption that the attorney shared information with his partners, thereby requiring the disqualification of the entire firm." *Whatcott*, 757 F.2d at 1101.

---

[1] When a federal grand jury returned the indictment in this case, the state dropped its charges against Stormy Bob Griffith.

9

In the context of cross-examination, the defendant's and Stacy Griffith's interests are materially adverse. "Examining one's own client as an adverse witness on behalf of another client, or conducting third party discovery of one client on behalf of another client, is likely (1) to pit the duty of loyalty to each client against the duty of loyalty to the other; (2) to risk breaching the duty of confidentiality to the client-witness . . . [which is] likely to present a direct adverseness of interest." ABA Comm. on Ethics and Professional Responsibility, Formal Op. 92-367 (1992), reprinted in ABA/BNA LAWYERS' MANUAL ON PROFESSIONAL CONDUCT at 1001:151 (1993). Courts, interpreting essentially similar rules of professional conduct, have concluded that deposing or cross-examining former clients in a related matter are adverse for the purpose of Rule 1.9. *See, e.g.*, *Sykes v. Matter*, 316 F. Supp. 2d 630, 635 (M.D. Tenn. 2004); *Selby v. Revlon Consumer Prods.*, No. 3-96-CV-2864-D, 1997 U.S. Dist. LEXIS 19803 (N.D. Tex. Sep. 17, 1997); *Bobkoski v. Bd. of Educ. of Cary Cmty. Consol. Sch. Dist. No. 26*, No. 90 C 5737, 1991 U.S. Dist. LEXIS 5020, at *1 (N.D. Ill. Apr. 11, 1991).

As to the final prong, Stacy Griffith, through her current attorney, has represented to the United States that she does not intend to consent to the adverse representation.

Rule 1.9, among others, recognizes that proper propriety and the administration of justice involves a duty of loyalty between defense counsel and current or former clients. "As numerous cases have recognized, this duty of loyalty requires disqualification when a former client seeks to cooperate with the government and testify against the present client." *United States v. Bikundi*, 80 F. Supp. 3d 9, 18 (D.D.C. 2015) (quoting *United States v. Alvarez*, No. 10-20547-CR, 2010 WL 4774649, 2010 U.S. Dist. LEXIS 125489, at *12 (S.D. Fla. Nov. 15, 2010)); *United States v. Miranda*, 936 F. Supp. 945 (S.D. Fla. 1996); *United States v. Culp*, 934 F. Supp. 394, 398-99

(M.D. Fla. 1996); *United States v. Davis*, 780 F. Supp. 21 (D.D.C. 1991); *United States v. Cheshire*, 707 F. Supp. 235 (M.D. La. 1989); *United States v. Cruz*, 982 F. Supp. 946 (S.D.N.Y. 1997) (disqualifying attorney when wife of former client was testifying as a government witness with the hope that the government would file a motion to reduce the husband's sentence based upon her cooperation); *see also Nix v. Whiteside*, 475 U.S. 157, 188 n.7 (1986) (Blackmun, J., concurring) (observing that "an attorney who has previously represented one of the state's witnesses has a continuing obligation to that former client not to reveal confidential information received during the course of the prior representation. That continuing duty could conflict with his obligation to his present client, the defendant, to cross-examine the state's witnesses zealously").

### III.    The Proffered "Waivers" Do Not Waive the Conflict

Prior to the final pretrial conference, defense counsel filed a document (Doc. 53) titled "Waiver of Conflict of Interest." This document is an advisement, apparently executed on February 9, 2016, more than six months before the events underlying the federal charges took place. The document advises Stormy Griffith and Stacy Griffith on the risks associated with simultaneous representation. The document discusses potential future conflicts that could arise, and explicitly states that the relevant attorneys "are convinced as a professional and ethical matter that there is no actual conflict of interest," and that acceptance of the two co-defendants was premised upon the non-existence of any such conflict.

The conflict in this case arose when Stacy Griffith became a witness for the United States, more than a year after the advisement was executed. The advisement makes no mention of any actual conflict. It does not involve waiving the attorney's duties of loyalty, nor does it

involve waiving attorney confidentiality except that it allows sharing of information among the two co-defendants. It does not purport to provide consent from Stacy Griffith for her attorneys to take a materially adverse position to her with regard to a matter substantially related to their representation of her. Accordingly, the proffered documents are not relevant to the conflict.

**IV.   Conclusion**

For the foregoing reasons, the United States respectfully requests that the Court find that a conflict of interest exists, and that disqualification of defense counsel is required in order to ensure that the defendant's trial is conducted within the ethical standards of the profession, to ensure that the defendant is properly and zealously represented, and to avoid any impropriety.

Dated:  April 24, 2017.

Respectfully submitted,

ROBERT C. TROYER
Acting United States Attorney

By: */s/ E. Garreth Winstead*
E. GARRETH WINSTEAD
BRYAN FIELDS
Assistant United States Attorneys
1801 California Street, Suite 1600
Denver, Colorado 80202
Phone:  (303) 454-0100
Fax:  (303) 454-0403
E-mail:  Garreth.Winstead@usdoj.gov
Attorneys for the United States

**CERTIFICATE OF SERVICE**

  I HEREBY CERTIFY that on April 24, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which system automatically provides a copy to defense counsel of record.

                */s/ E. Garreth Winstead*
                E. GARRETH WINSTEAD
                Assistant United States Attorney
                1801 California Street, Suite 1600
                Denver, Colorado 80202
                Phone: (303) 454-0100
                Fax: (303) 454-0403
                E-mail: Garreth.Winstead@usdoj.gov
                Attorney for the United States