IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. **No. 1:16-cr-00329-MSK-GPG**

UNITED STATES OF AMERICA,

    Plaintiff,

v.

STORMY BOB GRIFFITH,

    Defendant.

---

DEFENDANT'S RESPONSE TO THE GOVERNMENT'S MOTION TO DISQUALIFY

---

    I.    Stacy Griffith must be prevented from testifying as Stormy Griffith does not waive his right to the spousal communication privilege – Mr. Griffith's invocation of that privilege supersedes the Government's need for Mrs. Griffith's testimony.

The Government cites multiple state law cases as to spousal communication privilege, but the privilege invoked here is a state law privilege, and Colorado state law must govern, as there is no federal law concerning either testimonial nor marital communication privilege. Colorado Revised Statute § 13-90-107 controls who may not testify without consent, and § 13-90-107 (1)(a)(i) holds that:

> *(a)(I) Except as otherwise provided in section 14-13-310(4), C.R.S., a husband shall not be examined for or against his wife without her consent nor a wife for or against her husband without his consent; nor during the marriage or afterward shall either be examined without the consent of the other as to any communications made by one to the*

*other during the marriage; but this exception does not apply to a civil action or proceeding by one against the other, a criminal action or proceeding for a crime committed by one against the other, or a criminal action or proceeding against one or both spouses when the alleged offense occurred prior to the date of the parties' marriage. However, this exception shall not attach if the otherwise privileged information is communicated after the marriage.*

The information the Government has put forth that it will elicit from Mrs. Griffith was not put forth after the end of the marriage, as the parties are still married. The parties were married at all times that any communications or communicative acts occurred, and thus the privilege remains intact, and is in fact being invoked by Mr. Griffith.

The Supreme Court has long recognized the common law privilege against disclosure of communications between spouses. *See Trammel v. United States*, 445 U.S. at 51, 100 S.Ct. at 912; *Blau v. United States*, 340 U.S. 332, 333, 71 S.Ct. 301, 302, 95 L.Ed. 306 (1951); *Wolfle v. United States*, 291 U.S. 7, 13, 54 S.Ct. 279, 280, 78 L.Ed. 617 (1934). In fact, this privilege is the second oldest testimonial privilege recognized at common law. *VIII Wigmore on Evidence*, s 2333 (McNaughton rev. 1961) (hereafter, "Wigmore" ). Marital confidences are considered "so essential to the preservation of the marriage relationship as to outweigh the disadvantages to the administration of justice which the privilege entails." *Wolfle*, 291 U.S. at 14, 54 S.Ct. at 280. An interspousal communication is presumed to be confidential, although that presumption may be overcome by proof that it was not intended to be private. *Pereira v. United States*, 347 U.S. 1, 6, 74 S.Ct. 358, 361, 98 L.Ed. 435 (1954). Such testimonial privileges, however,

*"contravene the fundamental principle that 'the public has a right to every man's evidence.' (Thus,) they must be strictly construed and accepted 'only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth.' "*

*Trammel*, 445 U.S. at 50, 100 S.Ct. at 912. *United States v. Neal*, 532 F. Supp. 942, 945 (D. Colo. 1982), aff'd, 743 F.2d 1441 (10th Cir. 1984).

The Government charged Mr. Griffith without the cooperation of Mrs. Griffith. The Government, beholden to Rule 3 of the Federal Rules of Criminal Procedure, signed under oath that the complaint was true to their knowledge, and prosecutable as charged. If the Government was able to proceed without Mrs. Griffith prior to their April 20, 2017 disclosure of Mrs. Griffith as a witness, this court should uphold the sanctimony of marriage and uphold the marital communication privilege. The Government certainly believes that the attorney client privilege is sacrosanct, and is attempting to disqualify Mr. Griffith's chosen counsel under the belief that the attorney-client privilege is being violated, it should show the same deference for the marital communication privilege.

II. **Mr. Griffith's counsel has no conflict with Mrs. Griffith the witness – she waived her conflict with Mr. Griffith in the only criminal case at issue**

Stormy Griffith's right to have his chosen defense counsel trumps his wife's desire to have his lawyer withdraw. [W]here the court's concern is protecting the interests of former clients rather than protecting the defendant, avoiding mistrial or reversal from later-materializing actual conflicts, or undermining public confidence in the impartiality

and fairness of the process, a defendant's choice of counsel will not lightly be denied. *People v. Frisco*, 119 P.3d 1093, 1095 (Colo. 2005) citing *Rodriguez*, 719 P.2d at 706–08.

Motions to disqualify counsel rest within the sound discretion of the trial court. FDIC v. Sierra Resources, Inc., 682 F.Supp. 1167, 1170 (D.Colo.1987). The party seeking disqualification under Rule 1.9 must provide the court with specific facts to show that disqualification is necessary and he cannot rely on speculation or conjecture. *Id.* The Government cites Colorado Rule of Professional Conduct 1.7, which the defendant will not address as it governs conflicts with current clients, and Mr. Griffith emphatically demands that Mr. Buck remains as his counsel. Mrs. Griffith is not a current client of Mr. Buck's, and his representation of Mrs. Griffith in the prior criminal case consisted of having his name written on an entry of appearance. He never spoke with Mrs. Griffith related to her criminal case, and the entirety of his knowledge about her state case is that of the state criminal case discovery.

Additionally, Mr. Buck would point out for the record that Mrs. Griffith had additional counsel, Brandon Luna (Colorado bar number 36120), and at the only hearing that Mr. Buck appeared at during the criminal trial, he entered appearance for Mr. Griffith, and Mr. Luna entered appearance for Mrs. Griffith.

> Colorado Rule of Professional conduct reads as follows:
>
> > *(a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse*

*to the interests of the former client unless the former client gives informed consent, confirmed in writing.*

*(b) A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client*

*(1) whose interests are materially adverse to that person; and*

*(2) about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter; unless the former client gives informed consent, confirmed in writing.*

*(c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:*

*(1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or*

*(2) reveal information relating to the representation except as these Rules would permit or require with respect to a client.*

Here, there are a litany of issues with the government's argument that Mr. and Mrs. Griffith have adverse interests. First, the case at bar is not the same or substantially related matter – other than both the state case and this case relating to marijuana, and both

5

parties. Mrs. Griffith is not a defendant in this case, Mrs. Griffith is not a defendant in a parallel or contemporaneous federal case, and given the Government's motion to appoint counsel for Mr. Griffith's witnesses, counsel believes that Mrs. Griffith has been granted immunity for her testimony – therefore there is no conflict with exists under 1.9(a), and if this court finds that the facts of this case are substantially related to the state case, Mr. And Mrs. Griffith have signed a waiver, waiving all conflict that arises out of the state case. If the state case and the federal case are substantially the same, then the waiver must cover both cases. (See docket entry 53, a signed waiver by the Griffiths for their parallel state cases). "Substantiality is present if the factual contexts of the two representations are similar or related." *English Feedlot, Inc.*, 833 F.Supp. at 1506 (internal citation omitted); *Cole v. Ruidoso* Municipal Schools, 43 F.3d 1373, 1384 (10th Cir.1994). The plaintiffs must provide the court with sufficient evidence to enable the court "to reconstruct the attorneys' representation of the former client, to infer what confidential information could have been imparted in that representation, and to decide whether that information has any relevance to the attorney's representation of the current client." *Id.* (citing *Koch v. Koch Industries*, 798 F.Supp. 1525, 1536 (D.Kan.1992)). Here, the Government has not provided any evidence showing that Mr. Griffith's counsel did *anything* for Mrs. Griffith. Their motion is completely bereft of any evidence whatsoever, and were the court to inquire of Mrs. Griffith, she would admit that Mr. Buck's partner, Robert Corry, was the primary contact point for their case. If this court is to hold that all marijuana cases are related, then the government could only prosecute someone for cultivating marijuana one time, all other times would be substantially related, because the Government's logic is that mere similarity in facts and the crime indicted for are all that are relevant. Time is also an

element of an offense, and the times that the government is alleging that Mr. Griffith cultivated marijuana is a distinct and separate time period from the state case. Mr. Buck is not contesting that an attorney-client relationship ever existed between himself and Mrs. Griffith, merely that that representation prevents him from representing Mr. Griffith. During the period of representation of Mrs. Griffith, Mr. Buck obtained no confidential information, and has no information available to him that was obtained during the period of representation. "If there is a reasonable probability that during the course of the earlier representation, the former client disclosed confidential information which could be used against him in the subsequent adverse representation, the two matters are considered to be substantially related. SLC *Limited V v. Bradford Group West, Inc.*, 999 F.2d 464, 467 n. 3 (10th Cir.1993)" (applying *Utah Prof.Conduct Rule 1.9* which requires that the representations be "substantially factually related").[1] Here, as Mr. Buck and Mrs. Griffith never discussed her case, there is not a possibility than any confidential information was disclosed.

Although there appears to be no clear consensus about precisely how the "substantial relationship" test should be applied without simultaneously exposing the very matters to be protected, *see generally ABA/BNA Lawyers' Manual on Professional Conduct* 51:223–25 (2002), assessing whether the two representations are "substantially related" has been described as a process of factual reconstruction, see *Westinghouse Elec. Corp. v. Gulf Oil Corp.*, 588 F.2d 221, 225 (7th Cir.1978*); see generally Charles W. Wolfram, Symposium: Restatement of the Law Governing Lawyers,* 10 Geo. J. Legal Ethics 677 (Summer 1997). It

---

[1] The Utah RPC is substantially similar enough to the Colorado RPC as to make this case appropriate here.

necessarily entails some consideration of the likelihood that the attorney would have been exposed to confidential client information relevant to the prior matter, as well as the likelihood that such confidential material will be relevant to the later representation. *Westinghouse*, 588 F.2d at 225. Unless both cases involve an identical legal dispute or the same factual events, making it obvious that matters relevant to both would normally have been discussed in the earlier representation, evaluating the relationship between the representations will therefore generally require some factual inquiry and the identification of confidential factual information that would normally be obtained in the former representation and disadvantage the former client in the current representation. *People v. Frisco*, 119 P.3d 1093, 1096 (Colo. 2005). Here, the legal disputes, are obviously separate at this case is in federal court and the prior matter was one of state concern. Here, there was no earlier disclosure as Mr. Buck and Mrs. Griffith have never discussed her state case, which is still ongoing. If there are issues that Mrs. Griffith is concerned about regarding her state case, she should discuss them with her state counsel.

    Under 1.9(b), Mr. Griffith's interests are not adverse to Mrs. Griffith's. Mrs. Griffith's testimony is certainly adverse to *herself*, and her testimony is certainly adverse to Mr. Griffith, but Mr. Buck's representation of Mr. Griffith is not adversarial to Mrs. Griffith, given that 1.9(b)(2) is not met here. As previously stated, Mr. Buck has no privileged information about Mrs. Griffith or her case, as he has never discussed Mrs. Griffith's case with her, and all of the information related to the case is a mirror image of Mr. Griffiths case, and all information in Mr. Buck's possession is non-testimonial, it is merely police reports and photographic evidence. 1.9(b)(2) is also waived by the written waiver which was submitted to this court, as Mrs. Griffith has signed an immunity waiver with the

government, and therefore faces no danger in federal court. Mrs. Griffith is choosing to voluntarily testify in Mr. Griffith's case, and therefore is placing herself in state jeopardy no matter who Mr. Griffith's attorney is. The jeopardy she faces by testifying is immaterial to who Mr. Griffith chooses as his attorney, therefore the fact that she is choosing to participate in this case should not cause Mr. Griffith to lose his chosen counsel.

III.     Conclusion

A defendant's right to choose his own counsel is as important as the ability to speak freely while in a marriage. The government's motion attempts to guillotine both privileges in one fell swoop, it should not be allowed to. The defendant was charged before Mrs. Griffith agreed to participate in this case, and therefore the government has already asserted that it believes it can prove the case against the defendant, beyond a reasonable doubt, without severing spousal communications privilege. Suppressing the government's late-disclosed witness would solve all of the issues that her testimony would create. For that reason, Stacy Griffith should be disqualified as a witness. Should this honorable court allow her to testify, it should find that no conflict exists, as this federal case is wholly separate from the state case against Mrs. Griffith, and Mr. Buck possesses no confidential information about Mrs. Griffith's state case.

DATED: April 30, 2017

Respectfully submitted,<br>
/S Matthew W. Buck<br>
Corry & Associates<br>
437 W. Colfax Avenue Suite 300<br>
Denver, CO 80204<br>
303-634-2244<br>
buck@robcorry.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of April, 2017, I filed the foregoing **DEFENDANT'S RESPONSE TO THE GOVERNMENT'S MOTION TO DISQUALIFY** with the clerk of the Court using the CM/ECF system, which will send notification of such filing to all interested parties.

*/S Matthew W. Buck*